### Noblit *et al. versus* Bonnaffon.

Bonnaffon agreed in writing to lend Richmond & Co. his notes for $15,000, payable as might be convenient; in consideration they transferred to him all their furniture, stock, fixtures, good-will, debts and all their assets, he to employ them as his agents in disposing of the furniture. &c., collecting debts, with a view to close the business at a time specified, and to pay him all the moneys received; the proceeds first to pay their outstanding liabilities, then to meet his notes, and the balance, if any, to them, The business was continued apparently as before; Bonnaffon being frequently at the store and seeing the work going on; they purchased goods in their own name to complete unfinished work, the sellers not knowing of Bonnaffon's interest. *Held*, that Bonnaffon was not liable for these goods.

January 13th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia:* Of January Term 1874, No. 160.

This was an action of assumpsit, brought November 4th 1871, by Dell Noblit, Jr., and others, trading as Noblit, Brown & Noblit, against Albert L. Bonnaffon.

The claim of plaintiff as filed was $765.66, for goods sold and delivered to the said defendant, at his store, No. 45 South Second street, where he traded under the style of Richmond & Co. The goods were articles used in the manufacture, &c., of furniture; commencing May 3d 1870, and ending July 9th of the same year.

Previously to the 10th of January 1870, E. M. Broomall and W. B. Richmond, trading as Richmond & Co., were engaged in

(15)

[Noblit *v.* Bonnaffon.]

manufacturing and selling . furniture at No. 45 South Second street, Philadelphia; on that day they entered into the following agreement with the defendant:—

" 1. The said A. L. Bonnaffon agrees to loan to the parties of the second part his notes to the amount of fifteen thousand dollars, payable at such times and in such sums as may be convenient to the parties.

" 2. In consideration thereof the parties of the second part hereby assign and transfer unto the said Albert L. Bonnaffon the furniture, stock, fixtures, good-will, debts, accounts and all the assets of the firm of Richmond & Company as set forth in Schedule A, annexed hereto and made part hereof.

" 3. The said Albert L. Bonnaffon agrees to employ the parties of second part as his agents in disposing of said furniture and stock at private or public sales, and in collecting in the said debts, with a view to closing up the said business on or before July 1st 1870. The said agents shall render accounts, and at same times and oftener and pay over unto the said Albert L. Bonnaffon all moneys received from said business.

" 4. The said Albert L. Bonnaffon will apply the said moneys to the payment in first place of the outstanding liabilities of said firm as set forth in Schedule B, annexed. Secondly, in meeting his notes aforesaid. And in the event of any balance remaining after payment thereof with all expenses, interest, and costs whatsoever, the same shall be paid to the parties of the second part.

&ast;          &ast;          &ast;          &ast;          &ast;          &ast;          &ast;

" W. B. Richmond to draw one hundred and fifty per month till settled."

The schedule attached contained a very large number of items of furniture, with the value set opposite each, amounting in the whole to $9555.51.

The plaintiff gave evidence that the goods were sold and delivered at the store No. 45 South Second street; they sold the goods on the credit of Richmond & Co.; they did not know the defendant; plaintiffs had been dealing with Richmond & Co. about a year or eighteen months; they took notes for all these goods from Richmond & Co. The goods were all paid up to May 3d 1870 by Richmond & Co. The plaintiffs first knew of the agreement between Richmond & Co. and the defendant, in February 1871. After the agreement with defendant, Richmond & Co. proceeded to close out the business and agreed to dissolve the partnership; they had then enough to pay their debts. The furniture was in all. stages of progress; furniture was made up after that time; defendant was there frequently through all the store; Richmond & Co. were trying to get some one to go into business with them, but not having found any one, defendant said to one of the partners it was not policy in him to buy more goods;

he never authorized any of the firm to buy goods; he had no knowledge of their buying goods except from seeing them finishing goods and seeing the materials for finishing. Richmond & Co. purchased large amounts of goods from others during the time covered by this account; this appeared by their books to which defendant had access; other persons who sold to Richmond & Co. had no knowledge of defendant's interest. Richmond & Co. closed out by sales at auction and at private sale; defendant received part of the proceeds of the private sale, but not those from the auction sales; the proceeds not paid defendant were applied to paying the debts of the concern.

There was other evidence of the same character.

The plaintiffs having closed the court, Briggs, J., directed the entry of nonsuit, which the court in banc refused to take off.

The plaintiffs assigned this for error, on the removal of the record to the Supreme Court.

*W. H. Staake* and *E. S. Miller* (with whom was *G. W. Thorn*), for plaintiff in error.

*W. L. Hirst* (with whom was *T. J. Diehl*), for defendant in error.—Where the agency is created and confirmed by a written instrument, the nature and extent of the authority must be ascertained from the instrument itself, and cannot be enlarged by parol evidence of the usage of other agents in like cases, or of an intention to confer additional powers, for that would be to contract or vary the terms of the written instrument: Story on Agency, sect. 76, 78; Tod v. Benedict, 15 Iowa 591; Beach v. Shrere, 2 Beasley 455; Fode v. Anderson, 10 Mich. 357; Cochran v. Richardson, 33 Verm. 169; Loudon Savings Fund v. Hagerstown Saving Bank, 12 Casey 498; Paley on Agency 199 *et seq.;* Parsons's Mercantile Law, sect. 4, p. 145.

Judgment was entered in the Supreme Court, January 24th 1876,

PER CURIAM.—There seems to be no good ground of liability in this case. No credit was given the defendant; the credit was given to Richmond & Co. as theretofore. Defendant was not a silent partner, and not even an absolute purchaser of the goods, which were assigned only as a collateral security and remained in possession, apparently, if not really, of Richmond & Co. Nor did the defendant receive the entire proceeds. In no way could a contract to pay for the goods, taken up by Richmond & Co., be raised by implication, and certainly there was none by express agreement or even express request.

Judgment affirmed.